UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TARA M. L.,[1] | ) Case No. 5:19-cv-01331-JDE |
| Plaintiff, | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff Tara M. L. ("Plaintiff") filed a Complaint on July 19, 2019, seeking review of the Commissioner's denial of her application for supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on May 19, 2019. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff protectively filed her application for SSI on November 25, 2015, alleging disability commencing on September 22, 2015. AR 15, 226. On June 19, 2018, after her application was denied initially and on reconsideration (AR 79, 97), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). AR 35-53.

On July 12, 2018, the ALJ concluded Plaintiff was not disabled. AR 15-26. The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 25, 2015, the application date. AR 17. The ALJ found Plaintiff had severe impairments of: status post left ankle fracture; seizures, possibly controlled; and anxiety/depression. AR 17. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 416.967(b)[2], specifically, Plaintiff:

> [C]an lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours out of an eight hour workday; stand and/or walk for six hours out of an eight hour workday; push/pull as much as lift/carry; and occasionally work with moving

---

[2] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.
20 C.F.R. § 416.967(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

mechanical parts. The [Plaintiff] is precluded from climbing ladders, ropes, or scaffolds; working at unprotected heights; and operating a motor vehicle. Additionally, the [Plaintiff] is limited to performing simple, routine tasks; and making simple work related decisions.

AR 18-19.

The ALJ found Plaintiff had no past relevant work. AR 24. However, considering her age, education, work experience, and RFC, the ALJ concluded she was capable of performing jobs that exist in significant numbers in the national economy, including the jobs of: Cleaner (Dictionary of Occupational Titles ["DOT"] 323.687-014), Bagger (DOT 920.687-018), and Advertising distributor (DOT 230.687-010). AR 25. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act, since November 25, 2015, the date the application was protectively filed. AR 26. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-6.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a

"listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present one disputed issue: did the ALJ properly consider the consultative psychiatric opinion of Dr. Divy Kikani. See Jt. Stip. at 4.

A.   **Applicable Law**

In setting an RFC, an ALJ must consider all relevant evidence, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

B.   **Analysis**

On March 8, 2016, Dr. Kikani conducted consultative psychiatric evaluation of Plaintiff based on a one-time meeting with her. AR 559-62. He stated his source of information was Plaintiff, "in entirety." AR 559. He relayed her history of her present illness, her past psychiatric history, medical history, and family/social history. AR 559-60. His "review of systems" included "[h]istory of seizure disorder [and] health care problems due to alcohol abuse." AR 560. The doctor reviewed Plaintiff's activities of daily living, and noted she reported the ability to care for her personal needs such as

feeding, dressing, bathing, toileting, and that she could do household chores such as cook and clean. AR 560. The doctor's mental status examination included notations that Plaintiff's grooming was "unkempt" and that she ambulated with a walker. AR 560. He stated that her speech is low in volume and her affect "blunted." AR 560. Her thought content reflected feelings of despair, helplessness, and hopelessness. AR 560. The doctor stated that "in [his] opinion she was suffering from schizoaffective disorder, unspecified." AR 561. The doctor noted that Plaintiff had been seeing a psychiatrist and she was being managed with medication. AR 561. He found that Plaintiff showed moderate impairment in nearly all areas of mental functioning, except he opined that "she will have no problems remembering, understanding, and carrying out simple instructions," and had moderate-to-marked impairment "in persisting at normal work situations under customary work pressure." AR 561. He concluded by stating that in his opinion Plaintiff was "moderately psychiatrically impaired." AR 561.

      The ALJ set forth a detailed summary of Dr. Kikani's examination (AR 22-23), and he gave the opinion "little" weight based on: (1) Plaintiff's admissions; (2) recent mental health records; and (3) its inconsistency with the medical record. AR 24.

      The ALJ conducted a proper assessment of the opinion. Preliminarily, the Court notes that the ALJ did not reject the opinion in its entirety. By providing a summary of the opinion and assigning "little" weight, the ALJ necessarily gave consideration and credited aspects of the opinion. AR 24. Indeed, the ALJ limited Plaintiff's RFC to light work, restricted her from certain tasks that could be affected by her mental limitations, such as precluding her from operating a vehicle, and limited her "to performing simple, routine tasks" and "making simple work[-]related decisions." AR 19. These restrictions at least partially reflected Dr. Kikani's opinion. See, e.g., Reddick, 157 F.3d at

725 (ALJ can satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); Waldner v. Colvin, 2015 WL 711020, at *6 (D. Or. Feb. 18, 2015) (no error in RFC finding that specifically included limitations tailored to claimant).

To the extent the ALJ did not accept the more-restrictive mental limitations in the opinion, he gave proper reasons for doing so. First, the ALJ noted that Plaintiff admitted she had no problems with socialization. AR 24. Indeed, by the time of the hearing, Plaintiff generally denied many of the impairments that initially formed the basis of her claim of disability (see, e.g., AR 37-38, 41-42, 44), including testifying that she does not have any problems dealing with other people, that she does not get into fights or arguments with people where she lives, and that she does not have any problems when someone tells her what to do (AR 44). This, for example, conflicted with Dr. Kikani's findings that Plaintiff was moderately impaired in her ability to respond appropriately to coworkers, supervisors, and the public, or that she had a moderate impairment in her ability to respond appropriately to usual work situations. AR 561. The ALJ properly relied on the discrepancy between the opinion and Plaintiff's admissions. See Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by noting conflicting testimony); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (ALJ may reject opinion that conflicts with claimant's testimony).

Second, the ALJ found that Dr. Kikani's restrictive limitations were not supported by more-recent mental health records that showed she was doing well on medications, had stable mood, and logical thought process. AR 24. Progress notes reflected the ALJ's finding. AR 567 (3/16/16 – Plaintiff stable on medications); 618 (9/21/16 - Plaintiff "seems to be doing well"); AR 618 (10/19/16 (same)); AR 619 (11/11/16 (same)); AR 619 (12/14/16 Plaintiff

"denies having mental illness"); 620 (1/23/17 Plaintiff "continues to enjoy participating" at adult day health care center; Plaintiff "counseled and given positive feedback"); 621 (2/8/17 Plaintiff "is doing well," she "engaged and smiled"); 622 (3/24/17 Plaintiff "seems to be doing well" and "seems to enjoy both attending and participating" at adult day health care center; denies feelings of sadness); 622 (4/17/17 Plaintiff "seems to be doing well"); 623 (5/12/17 (same)); 623 (6/19/17 (same)); 7/12/17 (Plaintiff "continues to enjoy both attending and participating" at adult day health care center). Accordingly, the ALJ properly relied on this factor. See, e.g., Shavin, 488 F. App'x at 224 (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results[ or] reports . . ." (internal citation omitted)); Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled with treatment are not disabling).

      Finally, the ALJ pointed to Dr. Kikani's notations that Plaintiff was unkempt and ambulated with a walker. AR 24. However, the ALJ noted that two weeks before Dr. Kikani's examination Plaintiff admitted to doing well on medications, and just a week after the examination findings indicated Plaintiff had adequate grooming and hygiene, normal gait, and was logical and alert. AR 24. The ALJ properly determined that these findings, which bookended in close proximity Dr. Kikani's examination, were in stark contrast with findings in the opinion. See AR 571 [treating physician Dr. Edwin De Leon's 2/18/16 progress note stating "[Plaintiff] is doing well on the current medication; no acute issues; mood has been stable . . ."], 568 [De Leon's 3/16/16 progress note indicating "Appropriate Dress[,] Adequate Grooming[,] and Hygiene," and findings showing normal gait, "Logical" thought content, and "Alert/Awake" consciousness]; See Ford, 950 F.3d at 1156 (conflicting medical professional findings a valid consideration in discounting an opinion); Batson v. Comm'r

Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ("[I]t was permissible for the ALJ to give [opinions] minimal evidentiary weight, in light of . . . opinions and observations of other doctors."). While Plaintiff contends the ALJ's reasoning fails to appreciate that mental health impairments "wax and wane" (Jt. Stip. 7-8), these conflicting findings nonetheless are substantial evidence supporting the ALJ's decision. See Ford, 950 F.3d at 1156 ("Although [claimant] argues that the ALJ failed to recognize the inherently variable nature of mental illness, '[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.'" (citation omitted)).

The Court finds that the ALJ did not in his assessment of Dr. Kikani's opinion. Accordingly, reversal is not warranted.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: June 29, 2020

_____
JOHN D. EARLY
United States Magistrate Judge